UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

VALENTINO CASTRO,

    Plaintiff,

v.                                                Case No. 8:11-cv-1908-T-24TGW

THE SCHOOL BOARD OF MANATEE
COUNTY, FLORIDA,

    Defendant.
_____/

## ORDER

This cause comes before the Court on a motion for summary judgment filed by Defendant The School Board of Manatee County, Florida ("School Board"), Plaintiff Valentino Castro's response in opposition to the motion, and the School Board's reply. (Dkts. 23, 29, 38.) Castro, a school psychologist formerly employed by the School Board, alleges that the School Board terminated his employment because of his age, in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. ("ADEA"), and the Florida Civil Rights Act, Fla. Stat. § 760.01, et seq. ("FCRA"). He also alleges that the School Board terminated his employment in retaliation for filing complaints against the School Board, in violation of the Florida Public Sector Whistleblower Act, Fla. Stat. § 112.3187 ("FWA"). As explained below, the undisputed evidence shows that Castro cannot prevail on his claims as a matter of law, and therefore, the School Board's motion must be granted.

**I.      Background and Facts**

The following material facts are undisputed in the record: In January of 2003, Castro was hired by the School Board as a school psychologist. Castro was interviewed by Patricia

Bernhart, Supervisor of Student Services, who hired him for the position.  He was 52 years old at the time he was hired.  Castro was employed under an annual contract.  His duties included providing district-wide bilingual consultation and school-based psychological services to schools within the district.

**A.     Castro's Work Performance**

Throughout the course of Castro's employment, Bernhart received complaints from parents, principals, teachers, and district staff concerning Castro's performance, communication skills, and behavior in the work place.  As a result, Bernhart counseled Castro, and issued him warnings.

On March 4, 2003, Castro received an annual evaluation.  In this evaluation, Bernhart warned Castro about concerns regarding his clinical language and communication style.

On March 19, 2004, Principal Doug DeGrunchy at Palma Sola Elementary complained to Bernhart about a comment that was made by Castro.  Principal DeGrunchy addressed his concerns directly with Castro.

On April 14, 2004, Bernhart discussed with Castro complaints that she had received from several schools regarding his psychological evaluations and statements he made.

On November 9, 2004, a parent complained about a medical diagnosis that was rendered by Castro.  Bernhart addressed the complaint with Castro.

On March 23, 2005, Castro received an annual evaluation.  In this evaluation, Bernhart instructed Castro to work on making his written reports more "user friendly" for school staff and parents by explaining clinical language, terms, and concepts.

On June 3, 2006, Bernhart had a conference with Castro to discuss various concerns

about his job performance. Before this meeting, Bernhart informed Darcy Hopko, Executive Director for Human Resources, that she was considering not renewing his annual contract. During her meeting, Bernhart addressed two specific incidents that occurred at Samoset Elementary and Miller Elementary. She emphasized that, as a county-wide bilingual evaluator, it was essential for Castro to be able to readily integrate himself into unfamiliar settings, communicate effectively (both verbally and in writing), establish trust with school staff, and maintain credibility with other psychologists.

On May 24, 2007, Castro received an annual evaluation. In this evaluation, Bernhart mentioned that she had some concerns about Castro causing women to feel uncomfortable. Specifically, Bernhart stated that a group of female staff members had made efforts to avoid Castro due to "unwelcome attention."

On March 14, 2008, Castro received an annual evaluation. During his evaluation, Bernhart informed him that he needed to improve his verbal communication skills, and she reminded him about gender sensitivity.

In May of 2008, Bernhart received a complaint from a local neuropsychologist that Castro was "practicing neuropsychology." Based on this complaint, Bernhart instructed Castro to refrain from labeling any reports as neuropsychological evaluations.

On or about December 14, 2008, Bernhart received a complaint from Wendy Herrera, Principal at Orange Ridge Bullock Elementary, where she "strongly" requested that Castro have no further contact with anyone at Orange Ridge after he made inappropriate and unprofessional comments to a teacher. On January 8, 2009, Bernhart issued Castro a written reprimand for his actions. Specifically, Bernhart stated that Castro's verbal interactions with a student's teacher

resulted in a serious miscommunication. She wrote that, "[d]uring this interaction, Castro did not use good professional judgment; [he] did not sufficiently clarify verbal information and recommendations presented to the teacher; and [he] did not establish a level of rapport that allowed the teacher to feel comfortable questioning [him] when she had concerns about her interpretations of [his] recommendations. Bernhart reminded Castro that she had received several complaints from parents, staff, and private practitioners regarding his oral communication style and the manner and appropriateness of the information and recommendations offered. Bernhart warned Castro that recurrence of such behavior would result in further discipline.

On March 13, 2009, Castro received an annual evaluation. In this evaluation, he was rated "Unsatisfactory" in the categories of "Interpersonal Communication, Collaboration and Consultation" and "Home/School/Community Collaboration."

In September of 2010, Castro received an annual evaluation. This evaluation was satisfactory; however, it was noted that Castro tended to talk down to people.

**B.     Elimination of Three Psychologist Positions for the 2011-2012 School Year**

During the fall semester of the 2010-2011 school year, the school district faced a severe budget crisis. As a result, the Superintendent recommended in his annual budget for the 2011-2012 school year that one school psychologist position be eliminated. In addition, the Student Services Department lost its American Recovery and Reinvestment Act funding, which had been used to fund 1.7 school psychologist positions. Based on the budget crisis and the loss of the funding, Bernhart was required to eliminate 2.7 school psychologist positions for the upcoming 2011-2012 school year.

In determining which psychologists would not be recommended for reappointment, Bernhart based her decision on overall effectiveness and job performance, particularly in the area of Problem Solving/Response to Intervention ("PS/RtI"). She did not base her decision on seniority. In December of 2010, Bernhart identified Castro, Jeffrey Mull, and LaQuisha Walden as the three least effective psychologists within the Student Services Department.

Based on Castro's work history, the numerous complaints Bernhardt received over the years regarding Castro, the difficulty in identifying school assignments for Castro due to his reputation, and his lack of social, interpersonal, and communication skills, she decided in December of 2010, that she was not going to recommend Castro for reappointment for the 2011-2012 school year.

On March 28, 2011, Bernhart received notice that Walden was resigning from her position as a school psychologist. In light of Walden's resignation, Bernhart did not fill her position, and she still needed to eliminate two other psychologist positions. In April of 2011, Castro and Mull were notified of Bernhart's decision that their contracts would not be renewed due to the loss of funding and the fact that they were the least effective school psychologists in the Student Services Department.

### C. Implementation of PS/RtI

The Department of Education ("DOE") implemented a general education initiative known as Problem Solving Response to Intervention ("PS/RtI"), which evolved from school reform and legislation, including No Child Left Behind and the Individuals with Disabilities Education Act. PS/RtI is defined as the change in behavior or performance as a function of an intervention. The model is a multi-tiered approach to providing services and interventions to all

5

students at increasing levels of intensity based on progress monitoring and data analysis. Rate of progress over time is used to make important educational decisions, including determination of eligibility for exceptional student education services. The School Board staff received training from the DOE on PS/RtI, and began implementing it during the 2009-2010 school year.

On or about January 28, 2011, Bernhart attended a case review conference for a student at Manatee School for the Arts, a charter school. During the meeting, the school requested an evaluation for the student. Bernhart assigned the case to Castro.

On or about February 16, 2011, a case review conference was held for the student. The meeting was attended by Castro, Marie Volkhardt, School Psychologist, Pace Edwards, ESE Specialist, Terrence Devine, Assistant Principal of the charter school, and Andrea Schannen, ESE Coordinator for the charter school. During the meeting, Castro stated that Volkhardt was giving incorrect information about PS/RtI regulations to Devine, which sparked a disagreement. As a result, Volkhardt left the meeting.

Later that day, Bernhart met with Castro. During that meeting, Castro verbally claimed that "RtI as understood by the school district, is a violation of civil rights" by "not providing evaluations upon parental request." He claims that Bernhart responded by saying "Shut up your mouth." At the end of the meeting, Bernhart offered to schedule a conference call with the DOE to provide Castro with an opportunity to ask questions about the PS/RtI process. Castro was "enthusiastic" about this idea.

After this meeting, Castro wrote an email to Mary Louise Dirrigl with the Office of Special Education and Rehabilitative Services for the U.S. Department of Education. In this email, Castro wrote:

6

> I need to know and moreover, the district and the State need to know if eligibility for special education can be delayed or denied based on RTI process and results. Again, the State claims that this is the process to determine the need for services, but the need for services can be determined by other means.

Castro asked Dirrigl to "please clarify to the State of Florida Department of Education if we must wait for RTI to be completed, even if there is a reasonable certainty that the student is disabled already?"

On February 22, 2011, Bernhart emailed all of the school psychologists, informing them that she had arranged a conference call with two DOE consultants to discuss the questions posed by Castro. Bernhart invited all of the psychologists to participate in the telephone conference. The conference was held on February 24, 2011. During that conference, the school district was informed that if a parent requests an evaluation of the student before the interventions have been completed, the district must complete the general education interventions concurrently with the evaluation but before the determination of the student's eligibility. After this conference, Bernhart believed that all of the school psychologists understood and agreed on the PS/RtI process.

On February 27, 2011, Castro emailed Dr. Timothy McGonegal, Superintendent of Manatee County School District regarding his concerns with the PS/RtI process. Specifically, Castro wrote that the State requires the school district "to complete an RTI process and wait until it is finished to determine eligibility." Castro furthermore wrote that "it is not our school district that is struggling with these situations, it is [his] understanding that there are many school districts in Florida and even . . . 11 [other] states that design[ed] and/or implemented regulations that may violate [Free Appropriate Public Education]." After receiving this email, the Superintendent met with Castro to discuss his concerns.

7

On March 17, 2011, a survey was completed by Kathy Redmond, Principal at Palma Sola Elementary. In the survey, Redmond wrote:

> Working with Dr. Castro has been difficult this school year. At Palma Sola we so value his expertise regarding student[s] and their learning needs. However, this year, he has taken his own position on what the RtI process should look like. He is very condescending of district policies and often becomes extremely confrontational with our district RtI coach. I often feel that when Dr. Castro visits a meeting, our goals cannot be accomplished because he has his own agenda.

On or about March 25, 2011, Bernhart received a complaint from Barry Dunn, Principal at Jessie P. Miller Elementary School, regarding Castro. The complaint addressed his concern over an interaction that took place between Castro and a second grade teacher. The teacher reported that Castro followed her back to her classroom, rubbed up on her shoulder on several occasions, and did not respect her personal space. Due to this complaint, Principal Dunn requested that the school be assigned a different bilingual psychologist.

On April 21, 2011, Castro was notified that he was not recommended for reappointment for the 2011-2012 school year. That recommendation was made due to the budget restraints and loss of funding, and was based on Castro's work history, the numerous complaints Bernhart received over the years regarding Castro, the difficulty in identifying school assignments for Castro due to his reputation, and his lack of social, interpersonal, and communication skills. Castro was 61-years-old.

On August 31, 2011, Castro filed a three-count complaint against the School Board alleging that he was discriminated against on the basis of his age after Bernhart did not recommend him for reappointment. Castro also claims that the School Board retaliated against him for filing complaints concerning the PS/RtI process.

**II.    Standard of Review**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *Id.*

When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Id.* In determining whether there is a "genuine" issue, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## III.   Discussion

### A.   The School Board Is Entitled to Summary Judgment on Castro's ADEA and FCRA Claims.

Castro alleges that the School Board discriminated against him by terminating his employment because of his age in violation of the ADEA and FCRA. The ADEA prohibits an employer from "discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The Supreme Court has interpreted the ADEA's requirement that an employer took adverse action "because of" age as meaning that

9

age must be "the 'reason' that the employer decided to act." *Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2350, 174 L. Ed. 2d 119 (2009). In other words, "[t]o establish a disparate-treatment claim under the plain language of the ADEA . . . , a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." *Id.* Thus, the burden of persuasion remains on the plaintiff to prove his ADEA disparate-treatment claim, and he may do so either by direct or circumstantial evidence. *Id.* at 2351.

### 1.     Castro Has No Direct Evidence of Discrimination.

"Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact in issue without inference or presumption. Only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of [a protected characteristic] constitute direct evidence of discrimination." *Bass v. Bd. of County Comm'rs.*, 256 F.3d 1095, 1105 (11th Cir. 2001) (quotations, alterations, and citations omitted). Furthermore, "remarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). When refuting direct evidence of discrimination, the defendant's burden "is one of persuasion and not merely production." *Bass,* 256 F.3d at 1104.

Castro presented an affidavit from Jeffrey Mull in which he avers that Bernhart advised Mull "that there were younger psychologists graduating from college who had superior skills than [him]; although she failed to provide any specifics."[1] Contrary to Castro's position, this

---

[1] Bernhart denies making any ageist remarks. She avers that she told Mull that psychologists, who have recently graduated from college, have shown superior skills in the PS/RtI process. She avers that this comment was based on the fact that recent graduates are becoming more versed on the PS/RtI process through their academic studies and training, and had nothing do to with age. At the summary judgment stage, the Court must view the evidence

10

comment does not constitute direct evidence of age discrimination, as "only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age, . . . constitute direct evidence of discrimination. *Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir. 1989). To constitute direct evidence, a statement must "(1) be made by a decisionmaker; (2) specifically relate to the challenged employment decision; and (3) reveal blatant discriminatory animus." *Chambers v. Walt Disney World Co.*, 132 F. Supp. 2d 1356, 1364 (M.D. Fla. 2001). This comment was made to Mull–not Castro–and, there is no evidence that it related to Bernhart's decision not to reappoint Castro. The comment does not reveal blatant discriminatory animus without inference or presumption, and therefore, it does not constitute direct evidence of discrimination. *See Standard*, 161 F.3d at 1330.

### 2. Castro Cannot Prove a Circumstantial Case of Discrimination

To evaluate an age discrimination claim supported by circumstantial evidence, the Court uses the traditional *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), burden-shifting analysis.[2] *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc) (applying the *McDonnell Douglas* framework to circumstantial evidence in an ADEA case). Under this framework, the plaintiff must raise an inference of discrimination by establishing a prima facie case of discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 802,

---

in the light most favorable to Castro, and resolve all reasonable doubts in his favor.

[2]The Court acknowledges that the Supreme Court, in *Gross*, stated that it "has not definitively decided whether" the *McDonnell-Douglas* evidentiary framework is appropriate in the ADEA context. *Gross*, 120 S. Ct. at 2349 n.2. However, even after *Gross*, the Eleventh Circuit and district courts have continued to analyze ADEA claims under this framework. Therefore, the Court will continue to employ the *McDonnell-Douglas* framework, but will do so with the understanding that Castro must establish that age was the but-for cause of his termination–not simply a motiving factor.

93 S. Ct. at 1824. The burden then shifts to the defendant to "articulate some legitimate nondiscriminatory reason" for the alleged discrimination. *Id.* Once the defendant produces such a reason, the plaintiff must then prove that the legitimate reason was a mere pretext for discrimination. *Id.* at 804, 93 S. Ct. at 1826. To avoid summary judgment, the plaintiff must produce sufficient evidence to show "that the employer intentionally discriminated against him because of his [age]." *Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir. 1997).

### a. Castro cannot establish a prima facie case of age discrimination.

To establish a prima facie case of age discrimination under the ADEA when there is a reduction in force, Castro must demonstrate: (1) that he is a member of the protected age group and was adversely affected by an employment decision; (2) that he was qualified for his position; and (3) "evidence by which a fact finder reasonably could conclude that the employer intended to discriminate on the basis of age in reaching that decision." *Vaughn v. Morgan Stanley DW, Inc.*, 158 Fed. Appx. 205, 207 (11th Cir. 2005) (citing *Watkins v. Sverdrup Tech., Inc.*, 153 F.3d 1308, 1314 (11th Cir. 1998)).

Castro presented little to no evidence of an intent to discriminate. To establish intent, the plaintiff must offer evidence that could lead a fact-finder to conclude either "(1) that [the] defendant consciously refused to consider retaining a plaintiff because of his age, or (2) [the] defendant regarded age as a negative factor in such consideration." *Allison v. Western Union. Tel. Co.*, 680 F.2d 1318, 1321 (11th Cir. 1982).

The undisputed record establishes that Bernhart decided not to reappoint Castro based on his work history, the numerous complaints that Bernhart received over the years regarding Castro, the difficulty in identifying school assignments due to his reputation, and his lack of

12

Case 8:11-cv-01908-SCB-TGW   Document 40   Filed 10/19/12   Page 13 of 20 PageID 997

social, interpersonal, and communication skills. The only evidence presented by Castro that even remotely relates to age is the affidavit of Mull, who avers that Bernhart told him that "there were younger psychologists graduating from college who had superior skills than [Mull]; although she failed to provide any specifics." This evidence is insufficient to demonstrate Bernhart consciously refused to consider retaining Castro because of his age, or regarded his age as a negative factor in that decision. It does not relate to Bernhart's decision as to Castro's employment.

Furthermore, the School Board has presented undisputed evidence that another school psychologist, Beth Stone, who was sixty-four years old and three years older than Castro, was reappointed for the 2011-2012 school year. If age had been the "but-for" factor behind Bernhart's decision not to reappoint Castro, then Stone also would not have been reappointed for the 2011-2012 school year.[3] Consequently, Castro has failed to produce sufficient evidence that Bernhart intended to discriminate on the basis of age.

> b.  **Castro cannot establish that the School Board's legitimate, nondiscriminatory reasons for not reappointing him were pretextual.**

Even assuming that Castro established a prima facie case of age discrimination, he has failed to present sufficient evidence that the School Board's legitimate, nondiscriminatory reasons for not reappointing him were pretextual. At the beginning of the 2010-2011 school

---

[3] Evidence that Bernhart hired two school psychologists in 2010 does not create an inference of discrimination concerning the manner in which she selected three school psychologists for nonrenewal for the upcoming 2011-2012 school year.

year, Bernhart was aware that she needed to eliminate 2.7 school psychologist positions due to budget cuts and loss of funding.  In December of 2010, she identified three psychologists (Castro, Mull, and Walden) as being the least effective in her department.  It was at that time that Bernhart decided that she was not going to reappoint Castro for the reasons described above.  On April 21, 2011, Castro was notified that he was not being reappointed.

In determining whether the plaintiff has established pretext, "[a] plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer." *Chapman*, 229 F.3d at 1030.  "Provided that the proffered reason[s] [are] one[s] that might motivate a reasonable employer, an employee must meet th[ose] reason[s] head on and rebut [them], and the employee cannot succeed by simply quarreling with the wisdom of th[ose] reason[s]."  *Id.*  To rule in favor of the School Board, the Court "need not determine that the [School Board] was correct in its assessment of the employee's performance; it need only determine that the [School Board] in good faith believed plaintiff's performance to be unsatisfactory."  *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991.)

Castro has presented little to no evidence that the School Board's proffered reasons for not reappointing him were pretext for age discrimination.  The record is undisputed that Bernhart believed that Castro had exhibited certain performance problems, and that such problems warranted his non-renewal.  The only minimal evidence that Castro provided to contradict or rebut this belief is the affidavit from Mull in which he avers that Bernhart stated that "there were younger psychologists graduating from college who had superior skills than [Mull]; although she failed to provide any specifics."  Although the Court views this evidence in the light most favorable to Castro, it is insufficient to establish that the School Board's stated reasons for not

14

renewing Castro were a pretext to mask unlawful discrimination. This statement has very little probative value because it was not made in the context of the decision not to renew Castro, and it lacks supporting details. "[C]onclusory allegations [in an affidavit] without specific supporting facts have no probative value." *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985). This fact is simply insufficient to show that age was the "but-for" reason for Castro's nonrenewal. *Gross*, 129 S. Ct. at 2350.

In summary, the Court finds that Castro has not established a prima facie case of age discrimination, or that the School Board's legitimate, nondiscriminatory reasons for not reappointing him were pretext. The undisputed record shows that Bernhart believed that Castro had exhibited certain performance problems and selected him as one of the school psychologists who would not be reappointed for the 2011-2012 school year because of those problems. Castro has not provided sufficient evidence that he was the victim of intentional age discrimination. Accordingly, the School Board is entitled to summary judgment on this claim.

### B. The School Board Is Entitled to Summary Judgment on Castro's FWA Claim.

The FWA prohibits an employer from taking a retaliatory action against an employee "who reports to an appropriate agency violations of law on the part of a public employer . . . that create a substantial and specific danger to the public's health, safety, or welfare." Fla. Stat. § 112.3187(2). In analyzing a retaliation claim under the FWA, courts use the Title VII burden-shifting method of proof. *Siemriminski v. Transouth Fin. Corp.*, 216 F.3d 945, 950 (11th Cir. 2000). To establish a violation of the FWA, an employee must show that: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) there existed a causal connection between the two events. *See Fla. Dept. of Children and Families v. Shapiro*,

68 So. 3d 298 (Fla. 4th DCA 2011).

If the employee satisfies these three elements of a prima facie case under the FWA, the employer may rebut that case by proffering a legitimate, non-retaliatory reason for its actions. *Rice-Lamar v. City of Fort Lauderdale*, 853 So. 2d 1125, 1133 (Fla. 4th DCA 2002); Fla. Stat. § 112.3187(10) (stating that it is a defense to "any action brought pursuant to this section that the adverse action was predicated upon grounds other than, and would have been taken absent, the employee's or person's exercise of rights protected by statute.").

Once the employer satisfies its burden of articulating a legitimate, non-retaliatory reason for its action, the presumption of retaliation is eliminated. The burden then shifts back to the employee to prove by a preponderance of the evidence that the employee's proferred reason is merely pretext for prohibited, retaliatory conduct. *Sierminski*, 216 F.3d at 950.

### 1. Castro cannot establish a prima facie case of retaliation.

Castro's complaints concerning the PS/RtI process do not qualify as protected activity. A complaint is protected if the complainant demonstrates a "good faith, reasonable belief that the employer engaged in unlawful employment practices. It is critical to emphasize that a plaintiff's burden has both a subjective and objective component." *Little v. United Technologies, Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997). Furthermore, the FWA expressly provides that the information disclosed must include "[a]ny violation or suspected violation of any federal state, or local law, rule, or regulation committed by an employee or agent of agency . . . which creates and presents a substantial and specific danger to the public's health, safety, or welfare." Fla. Stat. § 112.3187(5)(a). The information must be disclosed "in a written and signed complaint" to the "chief executive officer" of the agency, or "other appropriate local official."

Fla. Stat. § 112.3187(6).

Castro specifically identifies two complaints which he asserts qualify as statutorily-protected expressions. First, he identifies his February 16, 2011 email to Dirrgl of the U.S. Department of Education in which he asked for guidance concerning the implementation of the PS/RtI process. This email does not meet the notice requirements of Florida Statute Section 112.3187(6) because it was addressed to an official with the U.S. Department of Education, and not a local School Board official. Furthermore, although there is evidence that Bernhart became aware of this email at some point, such evidence is not sufficient to establish that the email was disclosed to her such that it satisfied the notice requirements of the statute.

Furthermore, contrary to Castro's allegation, this email does not constitute a complaint about violations the School Board was allegedly committing in not providing evaluations to students. No where in the email does Castro allege or suggest that the School Board failed to provide evaluations to those students whose parents requested them. Rather, Castro sought guidance from, and posed questions to, the U.S. Department of Education concerning the implementation of PS/RtI.

Castro next points to a written complaint he submitted on June 4, 2011 to School Board Director of Human Resources, Rebecca Wells, in which he complained that he had been forced to retire as a result of his refusal to follow illegal orders from his supervisors.[4] This complaint does not constitute a statutorily-protected complaint by Castro that the School Board was violating laws that would "present[] a substantial and specific danger to the public's health,

---

[4]Castro asserts that he also submitted a written complaint to the "Office of Civil Rights," complaining of the same retaliation; however, such complaint has not been filed as a part of the record in this case.

17

safety, or welfare." Fla. Stat. § 112.3187(5)(a). Rather, Castro submitted this complaint after the School Board notified him that he would not be reappointed for the 2011-2012 school year. In it, he asserts that he was not reappointed because he "refused to follow inappropriate and illegal orders from [his] supervisor," which is essentially the basis of the present lawsuit.

Castro does not assert that his February 27, 2011 email to Superintendent McGonegal constitutes a statutorily-protected complaint regarding the School Board's implementation of PS/RtI. Nevertheless, the Court finds that it, too, is insufficient. In his email, Castro stated that "[t]his situation comes from the *State* mandating us to . . . [p]erform RTI and after RTI is finished then start an evaluation." (emphasis added). Castro reported that "[d]uring a telephone conference with the *State DOE* they specifically stated that we have to wait to determine eligibility for ESE until RTI is completed." (emphasis added). He concluded his email by stating that "it is not our school district that is struggling with these situations, it is [his] understanding that there are many school districts in Florida and even . . . 11 [other] states that design[ed] and/or implemented regulations that may violate [Free Appropriate Public Education]."

This email is insufficient to constitute a statutorily-protected complaint against the School Board because in it Castro complains about the DOE's interpretation and implementation of the PS/RtI process. He does not complain about specific actions of the School Board. Although Castro alleges that he complained about the PS/RtI process, the FWA requires that the complaint or objection be to an action, policy, or practice of the employer in violation of the law. The FWA does not protect an employee who is complaining about the actions of another agency or third party. *See Juarez v. New Branch Corp.*, 67 So. 3d 1159, 1162 (Fla. 3d DCA 2011).

All of these complaints are insufficient for the additional reason that they occurred after

18

Bernhart decided that she was not going to reappoint Castro for the upcoming 2011-2012 school year. One of the requirements for a whistle-blower complaint is that the complaint "was not made . . . after an agency's personnel action against the employee." *King v. State of Fla.*, 650 F. Supp. 2d 1157, 1163-64 (N.D. Fla. 2009). Here, the record is undisputed that Bernhart made her decision not to reappoint Castro for the upcoming school year, in December of 2010. Because Bernhart's decision occurred before Castro ever filed any complaint with the Superintendent or the U.S. Department of Education, his claim must fail.

### 2. Castro cannot establish that the School Board's legitimate, nondiscriminatory reasons for not reappointing him were pretextual.

Even assuming that Castro established a prima facie case of retaliation, he has failed to present sufficient evidence that the School Board's legitimate, nondiscriminatory reasons for not reappointing him were pretextual. The School Board presented undisputed evidence that Bernhart knew she needed to eliminate 2.7 school psychologist positions for the upcoming 2011-2012 school year because of budget cuts and loss of funding. It is also undisputed that in December of 2010, Bernhart identified three psychologists (Castro, Mull, and Walden) as the three least effective staff members, and decided that she would not reappoint them. That decision was made before Castro submitted his written complaints to the U.S. Department of Education or the Superintendent concerning the PS/RtI process. Furthermore, Castro's written complaints concerned the Department of Education's interpretation and implementation of PS/RtI–not actions taken by the School Board.

## IV. Conclusion

In conclusion, viewing the entirety of the record in the light most favorable to Castro, there are no genuine issues of material fact as to his claims of age discrimination or retaliation.

Accordingly, the School Board's Motion for Summary Judgment (Dkt. 23) is **GRANTED**. The Clerk is directed to enter judgment in favor of Defendant School Board of Manatee County, Florida, and against Plaintiff Valentino Castro, to close this case, and to terminate any pending motions. The pretrial conference previously scheduled in this case for November 13, 2012 is hereby cancelled, and this case is removed from the Court's December 2012 trial calendar.

**DONE AND ORDERED** at Tampa, Florida, this 19th day of October, 2012.

Copies to:
Counsel of Record

SUSAN C. BUCKLEW
United States District Judge